# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADRIANNA HERMOSILLO,

    Plaintiff,

    vs.                                            No. CIV 97-1346 JC/LFG

ROBERT TYLER, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment *(Doc. 43)*, filed September 28, 1998. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that Defendants' Motion for Summary Judgment is well taken in part and will be granted in part.

## I.    Factual Background

Plaintiff Adrianna Hermosillo was an employee of Defendant Bernalillo County Sheriff's Department and a participant in its Field Officer Training Program from December, 1996 until March 7, 1997. The Field Officer Training Program consists of three phases of training. By all accounts, Hermosillo performed well in the first two phases of training. In her third phase of training, she was assigned to a field training officer ("FTO") whom she knew personally. When she told her superior officers of this relationship, she was reassigned to Defendant Tyler. Hermosillo informed Defendant Simonson that she did not want to be assigned to Tyler because she had been acquainted with Tyler from her previous employment in Metropolitan Court. Hermosillo alleges that while she

was employed at Metropolitan Court, she declined an invitation by Tyler to go on a dinner date and spend the whole night together at Tyler's friend's apartment. Simonson, who is Tyler's brother-in-law, refused to reassign Hermosillo to another FTO.

Hermosillo alleges that Tyler constantly criticized her performance without justification, inquired into her relationship with her boyfriend, and said that the only reason she passed her phase two training was because she had sex with her phase two supervisor. Tyler did not pass Hermosillo, but recommended that she be placed on a Performance Improvement Plan for ten more days, with Tyler as her supervisor. Hermosillo objected to the Performance Improvement Plan, and requested that she be transferred to another FTO. Lieutenant Linthicum and Captain Stanley of the Sheriff's Department decided not to grant her request, but required Hermosillo to work with Tyler five more days. Stanley also indicated that he would consider reassigning Hermosillo to another FTO within those five days if she came to him with a new complaint. Stanley also disciplined Hermosillo's boyfriend Frank Chavez, who was a Deputy Sheriff in the Bernalillo County Sheriff's Department, for getting involved in the disputes between Hermosillo and Tyler.

Hermosillo worked one or two more days with Tyler.[1] Hermosillo alleges that Tyler told her that he controlled whether she passed the field evaluation once she was placed on the Performance Improvement Plan, and that the only way to pass field training would be to have sex with him. Hermosillo also alleges that Tyler told her that Frank Chavez would get in additional trouble if she reported his conduct to the superior officers. Tyler gave Hermosillo sub-minimum ratings in several

---

[1] The evidence submitted is inconsistent on this point, but it is not material to my decision. There is evidence that the performance improvement plan was implemented on March 3, 1997. *See* Ex. A2 to Pl. Resp. Mem. *(Doc. 45)*. There are two daily observation reports prepared by Defendant Tyler, dated March 4 and March 6, 1997. *See* Ex. A1 to Pl. Resp. Mem. *(Doc. 45)*.

areas after the Performance Improvement Plan was implemented.  Hermosillo took the next day as sick leave, then turned in her resignation.

Plaintiff filed an EEOC Charge of Discrimination on April 14, 1997, along with an accompanying affidavit.  In the Charge of Discrimination, she alleges discrimination based on sex and national origin, and states that she was subjected to harassment by her trainer.  The accompanying affidavit presents Hermosillo's theory that Tyler harassed her because she rejected his earlier attempts to date her.  Neither the Charge of Discrimination nor the Affidavit describe Tyler's alleged demand for sex in exchange for a passing grade.

**II.     Analysis**

Defendants' Motion for Summary Judgment requests that judgment be entered for Defendants as to all of Plaintiff's claims.  Defendants raise eight separate grounds for granting summary judgment:

1) Title VII claims may not be brought against supervisors in their personal capacity;

2) Plaintiff has failed to exhaust her administrative remedies as to her sexual harassment claims by failing to present those claims in her complaint to the Equal Employment Opportunity Commission ("EEOC");

3) Plaintiff has failed to establish actionable sexual harassment under Title VII;

4) No evidence is presented of a County policy or custom that would permit Section 1983 liability to be imposed against the governmental entity;

5) Plaintiff has not presented evidence of working conditions so intolerable as to amount to a constructive discharge;

6) Plaintiff has not presented evidence of an employment contract provision that Defendants breached;

7) Defendants' alleged actions did not meet the standard of extreme and outrageous conduct required to establish intentional infliction of emotional distress; and

8) Plaintiff has failed to present evidence or allege specific facts that could establish a conspiracy.

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). I must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

### A. Personal Capacity Title VII Claims

All parties agree that Title VII does not provide a cause of action against supervisors in their personal capacity. Therefore, all causes of action based on Title VII against Defendants Tyler, Simonson and Bowdich shall proceed in their official capacities only. *See Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996).

### B. Exhaustion of Administrative Remedies

Hermosillo must exhaust her administrative remedies before bringing suit under Title VII. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997). Because Hermosillo filed a timely EEOC complaint, she may include in this suit any allegations reasonably related to the allegations in

her EEOC complaint. *See id.; see also Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988).

Hermosillo's EEOC complaint and its supporting affidavit allege that she was discriminated against based on sex, that she was harassed by her trainer, and that the harassment was due to her refusal to date him in the past. Neither her EEOC complaint nor her EEOC affidavit make reference to Tyler's alleged demand for sex in exchange for a passing evaluation. *See* Ex. D to Mem. Br. *(Doc. 44)*. Nonetheless, I conclude that Hermosillo's Title VII claims in this suit are reasonably related to those stated in her EEOC complaint. Both the EEOC complaint and the Title VII claims in this suit are based on harassment of Hermosillo by her trainer due to her refusal to date him, and the refusal of her employer to reassign her to another trainer. By contrast, those cases that have held Title VII claims to be unrelated to those raised in an EEOC complaint have compared adverse employment action claims raised in the administrative charge with harassment claims brought in the district court action. *See Aramburu*, 112 F.3d at 1409-10 (wrongful discharge administrative claim not reasonably related to hostile environment claim) (citing *Archuleta v. Colorado Dep't of Insts.*, 936 F.2d 483, 488 (10th Cir. 1991); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985)).

### C. Title VII Sexual Harassment Claims

Defendants claim that the County of Bernalillo cannot be liable for Title VII sexual harassment claims because any alleged harassment by Defendant Tyler was not within the scope of his employment, the County did not have reason to know of any alleged harassment, and Tyler was not acting under apparent authority from the County. I disagree.

The Supreme Court recently established a new analytical framework for deciding whether an employer is liable for sexual harassment by a supervisor in the companion cases of

*Burlington Indus., Inc. v. Ellerth*, \_\_\_ U.S. \_\_\_, 118 S. Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, \_\_\_ U.S. \_\_\_, 118 S. Ct. 2275 (1998). In those cases, the Court held that employers are subject to vicarious liability for sexual harassment by a supervisor with immediate supervisory authority over an employee. *See Burlington Indus.,* 118 S. Ct. at 2270; *Faragher*, 118 S. Ct. at 2290. However, the employer may raise an affirmative defense when no tangible employment action is taken. *See Burlington Indus.*, 118 S. Ct. at 2270. This affirmative defense has two elements: the employer must show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Id.*

Because the County placed Tyler in a supervisory position over Hermosillo, the County can be subject to vicarious liability unless it can satisfy the affirmative defense described by *Burlington Indus.* Defendants provide a copy of a "boiler plate" policy prohibiting sexual discrimination and harassment (Standard Operating Procedure 121.29), but the mere existence of such a policy is not dispositive. *See Faragher*, 118 S. Ct. at 2285. Instead, the question is whether Hermosillo unreasonably failed to take advantage of the policy. Hermosillo alleges that she informed Defendant Simonson, Lieutenant Linthicum, and Captain Stanley of the harassment by Tyler, yet they refused to reassign her to another trainer. I conclude there are genuine issues of material fact that preclude summary judgment on this question.

### D. Section 1983 Claims

Municipalities, including counties, may be liable for damages under 42 U.S.C. § 1983, but not under a theory of *respondeat superior. See Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, "a plaintiff must show that the municipal action was taken with the

requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Comm'rs v. Brown*, ___ U.S. ___, 117 S. Ct. 1382, 1388 (1997). Where a facially lawful municipal policy causes an employee to violate a plaintiff's rights, the plaintiff must show "that the municipal action was taken with deliberate indifference to its known or obvious consequences." *Id.* at 1390.

Plaintiff claims a custom or policy of the Sheriff's Department to refuse to reassign trainers, even when the trainee complains of harassment based on her refusal to date him. Alternatively, Plaintiff alleges that the Sheriff's Department refuses to investigate adequately complaints of harassment. Plaintiff alleges that she brought this harassment to the attention of superior officers, yet they refused to investigate her allegations or to reassign her. From these allegations, it is possible to conclude that the refusal to reassign Hermosillo to a new trainer showed deliberate indifference to the obvious consequences of further harassment and *quid pro quo* sexual demands.

### E.    **Constructive Discharge**

The question of whether an employee has suffered a constructive discharge depends on "whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Derr v. Gulf Oil Co.*, 796 F.2d 340, 344 (10th Cir. 1986). At the time of her resignation, Plaintiff had been placed on a Performance Improvement Plan, with increased supervision by Tyler, and had received two daily performance reports in which Tyler listed sub-minimum performance. Plaintiff presents evidence that, if believed by a jury, would support a finding that Tyler was in a position to control her future Performance Improvement Plan evaluations; that her complaints to Defendant Simonson, Lieutenant Linthicum and Captain Stanley were futile and would only get her boyfriend in further trouble; and

that Tyler would continue to give her poor evaluations and to harass her unless she had sex with him. A jury could find that a reasonable person would feel compelled to resign if faced with such a choice.

  F. **State Contract Claims**

  Absent an express contract term to the contrary, employment in New Mexico is at the will of the parties and can be terminated by either party, at any time, for any reason or no reason, without liability. *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993), *cert. denied*, 510 U.S. 1118 (1994). New Mexico courts recognize two exceptions to this general rule: retaliatory discharge, and an implied contract term that restricts the employer's power to discharge. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 731, 918 P.2d 7, 10 (1996). Personnel manuals or policy statements may contain such terms, but not all personnel policies will constitute implied contracts that alter the at-will employment relationship. *See id.* at 731-32, 918 P.2d at 10-11. "[T]he promise that is claimed to have altered the presumed at-will term [ must] be sufficiently explicit to give rise to reasonable expectations of termination for good cause only." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. Where the employer is a governmental entity, the policy statement must be in writing to fall within the exception to governmental immunity contained in N.M. STAT. ANN. § 37-1-23(A). *See Garcia*, 121 N.M. at 732-33, 918 P.2d 11-12.

  Plaintiff cites two policies or statements that could be the basis for an implied contract. First, "Hermosillo understood that her continued employment depended only [sic] her compliance with the Standard Operating Procedures Manual." Pl. Resp. Mem. at 15. Plaintiff does not present any written terms that could reasonably create such an expectation. Second, Plaintiff alleges that "[d]epartment policy required Hermosillo to be present at a meeting when the PIP [Performannce

Improvement Plan] was considered." *Id.* at 16. Again, Plaintiff presents no evidence of a written statement of this policy. Even if such a written policy statement exists, Plaintiff presents no evidence that this statement alone could create an expectation of continued employment.

Because Plaintiff has failed to present evidence that the at-will employment relationship was altered by a written policy statement, summary judgment shall be granted in favor of the employer on all claims based on New Mexico contract law. *See Shull v. New Mexico Potash Corp.*, 111 N.M. 132, 135, 802 P.2d 641, 644 (1990). Counts II and V of the Complaint include claims based in part on state contract law. To the extent that these counts contain claims based on violation of Plaintiff's civil rights or state tort law, these counts remain.

### G. Intentional Infliction of Emotional Distress

Defendants assert that they are entitled to summary judgment on this claim because Plaintiff has not established the elements of intentional infliction of emotional distress. New Mexico follows the Restatement (Second) of Torts in defining the elements of this cause of action:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . . The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Mantz v. Follingstad*, 84 N.M. 473, 480 (Ct. App. 1972) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

Plaintiff presents evidence that Tyler pressured her to have sex with him through constant criticism and repeated threats that she would not pass her field training unless she consented. I find this evidence sufficient to establish a material issue of fact as to whether Tyler intended to inflict emotional distress on Hermosillo. I also find that Hermosillo's allegations, if believed by the jury, would establish outrageous conduct "utterly intolerable in a civilized community." *Id.*

### H. Existence of a Conspiracy Between Tyler and Simonson

Plaintiff alleges that Simonson and Tyler conspired to put Hermosillo in a position, with Tyler as her FTO and Performance Improvement Plan supervisor, in which Tyler could pressure Hermosillo into having sex. The only evidence that Plaintiff presents of this conspiracy is that Tyler and Simonson are brothers-in-law, that Simonson was the supervising officer responsible for assigning her to Tyler, and that Simonson and Tyler were responsible for creating the Performance Improvement Plan.

Plaintiff's response memorandum states that "[a] determination as [sic] whether the facts support a conspiracy claim as against Tyler and Simonson should await the deposition of Simonson which is still pending, as is the deposition of Tammy Sherfy." Pl. Resp. Mem. at 18 *(Doc. 45)*. The deadline for discovery has passed, and Plaintiff has submitted neither a motion to extend discovery nor a request to supplement her response with evidence from the depositions of Simonson or Sherfy. Therefore, I must conclude that Plaintiff does not have any other evidence of the alleged conspiracy.

I find that Plaintiff's theory of a conspiracy is plausible. However, Plaintiff has not presented evidence sufficient to create a triable issue on this claim. Plaintiff cannot establish a conspiracy without presenting "specific facts showing agreement and concerted action among defendants."

*Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). A jury could not find a conspiracy based on the evidence presented by Plaintiff without engaging in unwarranted speculation. Accordingly, the conspiracy claims shall be dismissed.

### III.     Conclusion

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment is **granted in part.** Partial summary judgment is granted to Defendants Tyler, Simonson and Bowdich in their individual capacity as to Plaintiff's Title VII claims. Partial summary judgment is granted to all defendants as to Count III, Conspiracy to Commit Civil Rights Violations. Finally, partial summary judgment is granted to all defendants as to all claims based on state contract law in Counts II and V of Plaintiff's complaint.

DATED this 7th day of December, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff : | Jonas Rane |
| | Albuquerque, New Mexico |
| Counsel for Defendants: | Agnes Fuentevilla Padilla |
| | Butt, Thornton & Baehr, P.C. |
| | Albuquerque, New Mexico |